IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN J. PFEIFFER,

                      Plaintiff,                      OPINION AND ORDER

   v.

                                                       07-cv-566-jcs

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one.

Plaintiff Kevin J. Pfeiffer has filed a motion for summary judgment in this action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). He seeks an order reversing the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff challenges the administrative law judge's assessment of the work-related limitations posed by plaintiff's

1

anxiety disorder, arguing that the judge failed to cite legally sound reasons for rejecting more severe limitations endorsed by plaintiff's treating psychotherapist and an examining psychiatrist, failed to explain adequately how he determined plaintiff's work abilities and failed to make a proper credibility determination.  In addition, plaintiff contends that the administrative law judge's determination that plaintiff can perform unskilled jobs as a delivery person, officer worker, mail clerk and gatekeeper is not supported by substantial evidence because it rests on vocational expert testimony that is inconsistent with the requirements of those jobs as called for in the <u>Dictionary of Occupational Titles</u>.

As will be discussed in more detail below, the commissioner has put forth a half-hearted defense of the administrative law judge's decision.  To the extent he has responded to plaintiff's arguments at all, it is with counter-arguments that are either incorrect or poorly developed.  Accordingly, because neither the administrative law judge's decision nor the commissioner's arguments in defense of the decision provide assurance that the judge evaluated the various medical opinions in the record in accordance with the commissioner's regulations, plaintiff's motion for summary judgment will be granted.  Further, even if I were to uphold the administrative law judge's evaluation of the medical opinions, remand would still be necessary because the administrative law judge did not provide a sufficient explanation of the basis for his findings with respect to plaintiff's abilities to interact with others.  Finally, because a new evaluation of the medical opinions could lead to a different

2

residual functional capacity, I do not reach plaintiff's remaining challenges to the administrative law judge's decision.

The following facts are drawn from the administrative record (AR). Because plaintiff does not challenge the administrative law judge's assessment of his physical abilities, I focus on the evidence relevant to his mental abilities.

FACTS

Plaintiff was born on November 12, 1959 and obtained his General Education Diploma in 1997. AR 47, 59. He had worked as a gasher, plastic company foreman, plant manager and security guard. AR 21. Plaintiff applied for social security disability benefits on February 20, 2003, but that application was denied on September 15, 2004. AR 14.

Plaintiff reapplied for social security benefits on October 20, 2004, alleging that he had been unable to work since September 16, 2004 because of fibromyalgia, diabetes mellitus, costochondritis (inflammation of the cartilage attaching the front of the ribs to breastbone) and an anxiety disorder. AR 55. After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on May 8, 2007 before Administrative Law Judge Arthur J. Schneider. AR 280.

At the hearing, plaintiff testified that he had left his last job as a security guard in 2005. In 2001, his employer had reduced his hours to 20 a week and moved him to a

3

quieter job site because he was missing work. Plaintiff attributed his absenteeism to his anxiety disorder, indicating that he had problems working full time because there were a lot of people around the job site and a lot of stress. He said he was no longer able to work because he had costochondritis-related chest pain, leg pain and frequent panic attacks that affected his ability to stay focused at work, deal with stress, work with people close to him and show up for work on a regular basis. Plaintiff indicated that he had struggled with these problems since 1997. He said his condition was better now that he was not working because he did not encounter as many stressful situations that might trigger a panic attack. He maintained an irregular sleep schedule and had few daily activities besides watching television or visiting his parents, grandparents or sister. He shopped for groceries between one and four in the morning to avoid being around a lot of people. He had no home of his own and lived either with his parents, grandparents or ex-wife.

    Medical records obtained by the Social Security Administration show that plaintiff sought treatment for his anxiety and panic attacks from his primary care physician, Dr. Alok Srivastava, on four occasions between April 26, 2002 and February 22, 2005. Dr. Srivastava prescribed anti-anxiety medication. Plaintiff also saw Heather Hainz, a psychotherapist, on six occasions between May 10, 2005 and June 15, 2005. Various reports in the record indicate that plaintiff had difficulty obtaining medications and attending psychotherapy on a regular basis because of a lack of insurance.

4

The record before the administrative law judge included opinions concerning plaintiff's limitations from five mental health specialists: Dr. Merrick and Dr. Vaughn, consulting psychologists who reviewed the record for the local disability agency; Dr. Julie Jacobs, a consulting psychologist who evaluated plaintiff on December 9, 2005 at the request of the Social Security Administration; Hainz, plaintiff's psychotherapist; and Dr. Larry Larrabee, a clinical psychologist who testified as a neutral medical expert at the hearing. For the most part, all agreed that plaintiff had a mental impairment (anxiety disorder and depression) that was "severe," meaning that it would impose significant limitations on plaintiff's ability to work. 20 C.F.R. § 404.1521(a) (defining "non-severe" impairment). (Dr. Merrick, who reviewed the record before plaintiff had been seen by any mental health professional, concluded that plaintiff had no severe mental impairment. AR 122.) The experts disagreed, however, about the nature and degree of plaintiff's work-related limitations.

By checking off boxes on a Mental Residual Functional Capacity Assessment form that listed various mental activities, Dr. Vaughn indicated that plaintiff had "moderate" limitations on his ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but that he had few other limitations. AR 187-188. Dr. Jacobs, however, found from her mental status evaluation of plaintiff and a review of his medical and mental health records that he would

5

have "marked" limitations in his ability to respond appropriately to supervisors, co-workers and the public and to withstand routine work stress. AR 205, 206. This opinion was shared by Hainz, who provided her findings and a detailed rationale in reports dated August 23, 2005 and January 4, 2007. AR 191-193, AR 210-216. Finally, in response to a question asking him to rate plaintiff's degree of impairment in the four broad categories of functioning relevant to determining impairment severity, see 20 C.F.R. § 404.1520a(b) (describing procedure for evaluating mental impairments), Dr. Larrabee testified that plaintiff had marked difficulties in maintaining social functioning, mild to moderate difficulties in maintaining concentration in persistence or pace and moderate restrictions in the activities of daily living. However, Dr. Larrabee was not asked to comment specifically on plaintiff's work-related abilities or mental residual functional capacity.

After the hearing, the administrative law judge issued a decision finding plaintiff not disabled. From a physical standpoint, he found that plaintiff could perform work at the light exertional level with various limitations. As for mental limitations, he found that plaintiff could perform "simple, routine, repetitive work" that required only occasional contact with the public. He found, however, that plaintiff was able to have contact with co-workers. His conclusion that plaintiff was not disabled was predicated on the testimony of a vocational expert, who testified at the hearing that an individual with such limitations would be able

6

to perform jobs existing in significant numbers in the regional economy, including office assistant, mail clerk, gatekeeper and light delivery.

In his decision, the administrative law judge stated that in formulating his residual functional capacity assessment, he had taken into account Dr. Jacobs's assessments of plaintiff's limitations on social interaction and enduring stress, as well as the opinions of Dr. Vaughn and Dr. Larrabee.  He remarked that Dr. Jacobs had assessed "primarily moderate limitations" that were "not entirely inconsistent" with those of Dr. Vaughn.  At the same time, however, he stated that Dr. Jacobs's opinions were "not entirely persuasive" because they were "based primarily on the claimant's self reported history."  AR 20.  The administrative law judge rejected Hainz's opinions, explaining that

> Ms. Hainz is a therapist and not a psychologist or a psychiatrist, while her assessments are based mostly on the claimant's reported history.  Moreover, Ms. Hainz admitted in response to a direct question regarding clinical testing that no such testing had ever been performed.

Id.

The administrative law judge observed that credibility was "not as much in issue as is generally the case" because his determination of plaintiff's work abilities was "essentially consistent with the claimant's testimony."  Id.  Somewhat paradoxically, he went on to find that "the claimant's statements concerning the disabling intensity, persistence and limiting effects of his symptoms are not supported by the evidence under the criteria of Social Security Ruling 96-7p."  AR 20.  He observed that the record did not substantiate certain

7

statements that plaintiff had made to health care professionals, including his statement to one physician that he needed a cartilage replacement in his chest and his reports to Hainz "of a heart inflammation accompanied by almost a decade of incapacitating panic attacks." Id.

## OPINION

Pursuant to 42 U.S.C. § 405(g), this court must uphold the commissioner's findings if they are supported by "substantial evidence." Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). At the same time, however, the court will not simply rubber-stamp the commissioner's decision without a critical review of the evidence. Id. The decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).

Plaintiff contends that the administrative law judge committed a number of errors in determining his residual functional capacity. First, he erred in rejecting the favorable medical

8

opinions of Dr. Jacobs and Hainz in favor of the opinion of the non-examining state agency physician. Second, even if the judge properly evaluated the medical opinions, his conclusion that plaintiff is able to have regular contact with co-workers (and by inference, supervisors) and to perform simple, routine repetitive work is not supported by those opinions. As a corollary to this argument, plaintiff argues that the administrative law judge failed in his decision to adequately explain how he translated the medical opinions or otherwise arrived at the work restrictions he adopted as plaintiff's residual functional capacity.

The commissioner offers what can be described at best as a lackluster response to these arguments. In response to plaintiff's argument that the administrative law judge erred in rejecting Dr. Jacobs's opinion, the commissioner argues that no such thing occurred, pointing out that the administrative law judge noted specifically that he had "taken into account" Dr. Jacobs's opinion that plaintiff had "marked" limitations in his ability to interact with others and to deal with stress. If this is the case, then what reason did the administrative law judge have for stating that he found Dr. Jacobs's opinion "not entirely persuasive" because it was "based primarily on the claimant's self-reported history?" The commissioner suggests that in making this statement, the administrative law judge was merely rejecting Dr. Jacobs's assessment of plaintiff's *physical* limitations, but this suggestion is untenable. The commissioner does not identify anything in Dr. Jacobs's reports that purports to be an assessment of plaintiff's physical limitations. I agree with plaintiff that the

9

most logical inference to be drawn from the administrative law judge's decision is that he accepted Dr. Jacobs's opinion to the extent that it was consistent with Dr. Vaughn's, but rejected it insofar as it endorsed more significant limitations.

The commissioner has established a regulatory framework that explains how an administrative law judge is to evaluate medical opinions, including opinions from state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources, and opinions from sources who have examined the plaintiff are entitled to more weight than opinions from non-examining sources. 20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2). See also Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). Other factors the administrative law judge should consider are the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6).

Apart from a boilerplate sentence indicating that he had weighed the various opinions in accordance with the commissioner's regulatory framework, nothing in the administrative

10

law judge's decision indicates that he considered the relevant factors of relationship, supportability, consistency or specialty in deciding to afford more weight to the opinion of Dr. Vaughn, a non-examining state agency consultant, than to that of Dr. Jacobs, an examining consultant. The only explanation he provided was his own conclusion that Dr. Jacobs had formed her opinion on the basis of plaintiff's self-reported history of an eight-year history of anxiety and panic attacks, the veracity of which the administrative law judge questioned.

Plaintiff does not deny that an administrative law judge is free to reject a doctor's opinion when it is founded on subjective complaints that the administrative law judge finds are not credible. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). He argues, however, that substantial evidence does not support the administrative law judge's conclusion in this case that Dr. Jacobs's opinions were founded solely on plaintiff's self-reported history. Plaintiff points out that in addition to taking a history, Dr. Jacobs conducted a mental status evaluation and reviewed plaintiff's medical and mental health records. He also notes that the administrative law judge did not discount the opinion of Dr. Larrabee, who also appeared to rely on plaintiff's self-reported history when he formed his opinions.

In spite of these valid arguments, the commissioner offers no defense of the manner in which the administrative law judge weighed Dr. Jacobs's opinion. He cannot expect the court to think of one. "It is not the obligation of [the] court to research and construct the

11

legal arguments open to parties, especially when they are represented by counsel." United States v. Wantuch, -- F.3d. --, 2008 WL 1902098, n.5 (7th Cir. May 1, 2008) (citation omitted). Having taken the position that the administrative law judge *did* account for the limitations found by Dr. Jacobs, the commissioner has waived any argument that the administrative law judge had good reasons for discounting Dr. Jacobs's opinion.

The commissioner has failed also to give a satisfactory answer to plaintiff's second question: If the administrative law judge *did* accept Dr. Jacobs's conclusion that plaintiff's ability to interact with others and deal with work stress was markedly impaired, how did he conclude that, in spite of these marked limitations, plaintiff was able to perform simple, routine repetitive work so long as it did not involve more than occasional public contact? The commissioner responds that plaintiff has "not pointed to or argued how the record warranted additional mental limitations beyond the ALJ's mental RFC finding," Mem. Concerning the Comm.'s Dec., dkt. #13, at 13 n.7, but this contention is inaccurate. In his brief, plaintiff points out that, contrary to the administrative law judge's finding, Dr. Jacobs did not suggest that plaintiff had a better ability to interact with co-workers and supervisors than with the public but rather found plaintiff's social limitations to be "marked" in all spheres. Plaintiff also points out that neither of the other doctors whose opinions the administrative law judge credited made any distinction among co-workers, supervisors or the public in considering plaintiff's ability to relate to others. Dr. Larrabee commented only

12

broadly on plaintiff's social functioning, rating it to be "markedly" limited, but did not draw any distinction between plaintiff's ability to interact with co-workers as compared to members of the public. Although Dr. Vaughn concluded that plaintiff had only "moderate" limitations in his ability to get along with coworkers and the public, he made to attempt to distinguish between these two groups. Contrary to the commissioner's contention, all of this evidence tends to show that plaintiff has greater limitations than those found by the administrative law judge, at least concerning his ability to relate to co-workers and supervisors.

The commissioner argues that the administrative law judge adequately accounted for plaintiff's difficulties working with others by limiting him to unskilled work, which involves working primarily with things rather than people. See 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.00(g), Regulations No. 4. Such a broad generalization, however, does not amount to substantial evidence that plaintiff can perform the specific unskilled jobs identified by the vocational expert. As plaintiff points out, *all* competitive work, even unskilled work, requires the ability to respond appropriately to supervision, co-workers and usual work situations. SSR 96-9p. Of note, the vocational expert said nothing to suggest that plaintiff's social difficulties would not require any additional accommodations beyond a limitation to unskilled work.

13

The commissioner's sole remaining argument is that it was the administrative law judge's responsibility to resolve conflicts in the medical evidence. However, this responsibility is not without bounds: an administrative law judge's findings must be based on testimony and medical evidence in the record and not on his own medical conclusions. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted). In this case, plaintiff has made a persuasive argument that the administrative law judge overstepped his bounds and played doctor when he drew a distinction between plaintiff's ability to relate to the public and his ability to relate to co-workers, a distinction not made by any of the medical professionals involved in this case. (Whether plaintiff has adduced evidence showing that he cannot handle the stress of even simple, routine repetitive work presents a closer question that I need not decide.) In the face of this argument, the commissioner has not identified any piece of testimony or medical evidence that supports this distinction. Accordingly, I agree with plaintiff that remand is warranted. Accord Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004) (remanding where administrative law judge appeared to account for plaintiff's social and temperament problems by finding that plaintiff should have only limited contact with public and coworkers, but said nothing of limiting contact with supervisors). See also SSR 96-8p (administrative law judge's residual functional capacity assessment must contain a "thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints of pain and other

14

symptoms and the adjudicator's personal observations, if appropriate" and must "set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work").

This is not to suggest that the record contains no evidence supporting the administrative law judge's assessment of plaintiff's work abilities or that the administrative law judge was required to discuss every piece of evidence in his decision. Indeed, this court is willing to uphold even poorly-explained decisions when pieces missing from the administrative law judge's decision can be inferred from the evidence or where it is plain from the record that the outcome would not change if the case was remanded. But where, as here, the plaintiff comes forth with medical evidence suggesting that he has greater limitations than found by the administrative law judge, the commissioner must do *something* to convince the court that the administrative law judge reached the correct conclusion. That something must be more than merely invoking the rule that administrative law judges are responsible for weighing the evidence.

On remand, the administrative law judge should conduct a new assessment of plaintiff's residual functional capacity, including a new evaluation of the medical opinions in accordance with 20 C.F.R. §§ 404.1527(d) and 416.927(d). He should explain the basis for his findings, specifying how he accounted for the various medical opinions and for plaintiff's own allegations about his mental limitations. Although my discussion has focused

15

on Dr. Jacobs's opinion, the administrative law judge should reevaluate the opinion of Hainz, plaintiff's psychotherapist. The commissioner's contention that the administrative law judge could disregard Hainz's opinions because she was not an "acceptable medical source" is contrary to the commissioner's regulations and Social Security Ruling 06-03p, which provide that evidence from "other sources" such as therapists must be considered because such evidence can establish the severity of an impairment and its effects on the claimant's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (visited May 20, 2008). (Although the administrative law judge cited other reasons for disregarding Hainz's report, the commissioner has not argued that those were adequate to justify the administrative law judge's finding. As noted before, I will not make the commissioner's arguments for him.) Finally, the administrative law judge should comply with his obligation under Social Security Ruling 00-4p to ask any vocational expert who may testify whether the expert's testimony is consistent with the Dictionary of Occupational Titles.

ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, denying plaintiff Kevin Pfeiffer's applications for disability insurance benefits and supplemental security income is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 30th day of May, 2008.

         BY THE COURT:

          /s/

         _____
         BARBARA B. CRABB
         District Judge